Good morning, ladies and gentlemen. Our first case for argument this morning is Great West Casualty v. Nationwide Agribusiness Insurance. Mr. Renfro. Thank you. Thank you, Your Honors. Good morning. I'm here on behalf of Nationwide and CONSERVE as the appellant in this case, and I just want to say my appreciation for all your time to hear my argument today. Appellants are requesting today that the court partially overturn the district court's order on summary judgment and find that Great West owed primary coverage to CONSERVE, Deer Pass Trucking, and Robert Fisher for the Brennan-Rumfeldef litigation that's currently pending in Illinois State Court. The basis upon which we are seeking their primary coverage to be for Great West, we found that owed primary coverage is interpretation of the Great West Other Insurance Clause, specifically subsection G, which states that Great West would owe primary coverage with respect to any liability assumed under an insured contract. Therefore, the question in front of your court is whether or not the interchange agreement is an insured contract between CONSERVE and Deer Pass Trucking. This is one of the rare instances when you look at insurance policy where you actually look at what the underlying contract says because it references it. There's a variety of cases that discuss an insured contract in Illinois State Court, none of which deal with this exact indemnity clause nor this exact issue. It's a very kind of unique case where my clients nationwide are CONSERVE. The only liability alleged against them in the underlying case is for vicarious liability and as a statutory employer. They provided a trailer that was involved in a two-car collision. They didn't operate the trailer. There's no allegation that the trailer was somehow defective. The only involvement they had was that their trailer was being pooled and that they were alleged to be vicariously liable and a statutory employer, which is another form of vicarious liability, for the driver of the truck that was carrying that trailer. That driver was, both sides agree, was an agent of Deer Pass Trucking. So we're looking at a case where we have only vicarious liability and then a case where the indemnification clause is not the type of indemnification clause that has been repeatedly addressed by the Illinois Court of Appeals and the Illinois Supreme Court of Virginia Surity. And I believe looking at the Virginia Surity case, which is the landmark case in this area for the Illinois Supreme Court, actually supports our argument here. Virginia Surity dealt with a general contractor who was being sued for the negligent or was being sued for- Why isn't Virginia Surity limited to the construction context? Your Honor, I think- Has it been applied in the insurance context? Well, I think what we're looking at here is Virginia Surity is talking about- and I do think there is an interplay with construction and the unique aspect that the anti-indemnification clause provides that. But ultimately, I think what the Virginia Surity case is really looking at is the way that the Contribution Act interweaves with joint and several liability in Illinois and what that means for when someone is in fact assuming tort liability for another party. Has any Illinois court applied the Virginia Surity case in the context of insurance as opposed to just an insurance dispute like you have here as opposed to just the construction context? Well, I would argue that the Virginia Surity case was an insurance dispute because ultimately what they were trying to find was whether- it was very focused on the construction context. So, has it been applied outside of the construction context? So, there are other cases that predate Virginia Surity that did and they are in the Hankins case that's mentioned, but I don't know the case.  Yeah, I don't know the case afterwards. So, for Virginia Surity to be applied, it would have to be after the fact. Correct. I haven't seen it applied outside of the construction context, but maybe you have. No, and Your Honor, you bring up a good point, is that this case is kind of a different factual scenario than most of these disputes are. Most of these disputes are in the construction context and what we're dealing with today is a case involving two motor vehicles that are colliding with each other where this isn't a case where one party is seeking contribution to another party and it's about whether or not how liability is being assigned between a contractor and subcontractor. What this case is about and why you have to pay attention to the identification clause at issue is my client, Conserve, is being sued for the negligence of Deer Pass Trucking agents. There is not any negligence. There is not any allegations that anything occurred outside of Deer Pass Trucking agent Robert Fisher. But if we look at the language of the contract itself, the Great West policy definition of insured contract, is that where you're wanting us to start? Correct. And so it says under which you assume the tort liability of another. Correct. All right. And so then when we go to the language with Deer Pass Farms Trucking and Conserve, I want to direct you directly to the DMAB provision, the Release and Hold Harmless section. Where are we tying those two together? They're assuming the liability of another. And I appreciate that. So if you look at the provision, the carrier is defined, and sometimes these terms get confused, the carrier is Conserve here and the shipper, or sorry, the shipper is Conserve here and the carrier is Deer Pass Trucking. Deer Pass Trucking was assuming defense indemnity for all claims arising out of or related to their use of the equipment. That's how this is different than the cases being cited. Except to the proportionate extent.  That any losses are caused by the negligent acts or admissions of, insert, Conserve. Correct. And so how are we tying that language as accepting tort liability for Conserve? So in advance, let me try to compare what the normal, what they've normally been dealing with is when these normal indemnity clauses, the subcontractor, whoever, is saying we assume, we are defending for our own negligence. Here it's saying we're defending for all claims except for the proportionate extent of, and I want to raise the proportionate extent that any losses are caused by negligent acts of the shipper. Tort liability here normally would only be, in Illinois, you'd be responsible for your own actions given contribution. Here we're being held, we could be held responsible because there is no proportionate share. They're concurrent because the claims against us are that we're both, that we are both being held as vicariously liable for this driver. There is no proportionate share. So this is assuming tort liability beyond that. Because beyond what's in this clause, and let me give you another example, in a case that involved a third party, if a third party was somehow involved in this, we would be, they would be required to defend and indemnify us for that third party's negligence for the use of their equipment because it's for any use and it's arising out of relating to any use. And that's, again, tort liability that's not normally under the law, that they are assuming under this contract. And that's what makes it an insured contract. It doesn't, the provision doesn't say it has to assume all tort liability. It just says it has to assume the tort liability. And I think that's a, this is their policy. And if they want it to be in all circumstances where it has to be complete indemnification for everything, they could have written it that way. They did not. So we have to read it to mean that if they assume tort liability, which they're doing here, that the insured contract provision applies and that we are then, the Great West policy is the primary policy. Are we accepting that there are also assuming tort liability, not for themselves, but also conserved? We are, they are assuming tort liability for instances where conserved was not to an extent negligent. And that, and why that's especially relevant here is that's the facts of this case, which makes this a unique case. Now, would I argue in this case, would it be an insured contract under any other facts there? I think it would, because they're assuming tort liability and it doesn't specify it's all tort liability. As long as they're assuming some tort liability that's not normally imposed by law, I think this becomes an insured contract. But it's directly on point in this case, luckily, that this is the type of tort liability they're assuming under this indemnification. Who's the other who you think they're assuming tort liability for? Conserved? Conserved, here, conserved, correct. Because there is no proportionate share of liability. So in a normal circumstance, if it was just for, let's use the example of if they're only assuming for their own negligence, whether it's proportional, concurrent, wouldn't matter. It's only for their own negligence. Here, because it limits it to just proportional share, they are assuming concurrent negligence, which is the only allegations against my client. And therefore, it's our position under this contract that Deer Pass has to pay, is entitled to pay this entire litigation for defense and indemnity. And that's why it makes an insured contract. For these reasons, there are some other arguments. So your focus is on the proportionate extent of the language? Correct. I think that is what takes it. Because I'm not sure that's what you argued below. Well, I think that the language, my focus is mostly arising out of the related use of the equipment, that it's not confining it to the negligence of Deer Pass trucking. And I gave some examples of why that matters. There could be other circumstances if there's a third party involved where they've assumed tort liability. This is just another example of concurrent negligence they've assumed tort liability. Another party assumed tort liability. Therefore, there's an assumption of tort liability here. I'm running into my rebuttal, and I do want to save myself time because there are arguments. Our argument is once we're on primary, there's no reason to go further. But there are arguments. I do want to be able to address those. Because if we do go further, there are arguments to why they should not get what they're seeking. Thank you, Your Honors. Thank you, Mr. Renfrow. Mr. Reed. Good morning. May it please the Court, my name's Scott Reed, representing Great West Casualty Company. We're the appellee in 24-1258 and the cross-appellant in 24-1259. I just wanted to briefly respond to some of the questions and issues that the panel raised in colloquy with Mr. Renfrow. On the Virginia surety case, that case, and addressing Judge St. Guy's question, I don't recall it either being applied outside the construction context, which, of course, invokes the Anti-Indemnity Act, which is kind of why you get to some of the issues that were raised there. But the specific holding of Virginia surety was that a waiver of the Kotechi cap for workers' compensation liability was not deemed to be an insured contract for the very reason that liability of another person or party wasn't assumed. And addressing Judge Pryor's questions, I think the issue is, and this is correct, it's the language of the interchange agreement, regardless of whether conserve FS as the owner of the trailer had any liability in the underlying tort case. It's a contract issue, and I think that Judge Pryor is exactly correct that there is no real liability of another person, and as Judge St. Eve stated, who is the other person whose liability is being assumed here? It would be conserve, but that's not what the language of the indemnity in the interchange agreement says. Under that, liability of conserve is not, it's specifically carved out. We're relying on that carve-out language, and I think... What about the argument regarding the proportionate extent that only part of the liability is carved out? I'm not sure that was argued below, but... That is exactly correct, and if the court sees the transcript which we included in our appellee... I did. I don't see it in there. It wasn't made, and I don't think it would be correct because that proportionate liability says, except to the proportionate extent that losses are caused by the negligent acts or omissions of conserve, that doesn't preserve... It doesn't transfer any of conserve's liability to Deer Pass Farms. The proportion has to do with conserve's conduct as compared to Deer Pass Farms, so I think even if the court were to consider that, which I think it's been clearly waived, it doesn't get them there. So I think basically the district court reached the right conclusion for the right reasons. There's nothing that I saw in the appellant's brief that suggests that the court, on either of the two major issues which were still preserved, there were three issues that were raised below. The first one we've discussed, which is the insured contract, and I've not seen any case. We rely on the Hankins case and other cases that follow Hankins that do find that contracts that don't assume the liability of another party do not qualify as insured contracts, and I think that's the line of cases the district court relied on citing specifically Hankins, but there are others that are similar, and unlike insurance policies, indemnity agreement language is all over the boards. I don't think there are a lot of form indemnity agreements. I see that Judge Easterbrook is kind of smiling at that one, and I think it's really true, which makes some of these indemnity agreement issues a little bit more complex. But that's the position that we've taken. I think the district court was right on that. The other issue was... Before you move off of 5G, the insurance contract definition in 5G says assume the tort liability of another. The interchange agreement talks about negligent acts but not vicarious liability. How do you respond to that? Why wouldn't vicarious liability fall within tort liability of another, but it's not carved out in the interchange agreement? I don't think that that makes a difference. I think that there... We haven't seen any Illinois case that suggests that because you might have vicarious liability of another... Again, that would be going back to Deer Pass Farms and the driver. I haven't seen any Illinois case that said that if there is some kind of carve-out for vicarious liability, which I don't think the language specifically says, I still think there is no other liability that is being assumed in that indemnity agreement. So I don't think that that gets you there either, and that would be my position on that. But again, there's no Illinois case that specifically addresses the argument that's made now. And again, I think this might be another one that was not made before the district court, that it was just the vicarious liability that's being asserted against Conserve because they own the trailer rather than the tractor and the driver, although they are the statutory employee of the driver. And that's another point. That's specifically one of the causes of action that Conserve is responsible for the acts of the driver himself as a... I'm not very familiar with the whole trucking liability body of case law, but that's what's being asserted against them, that he's their driver too. So would that mean that that's the liability of another even though they're responsible for him statutorily? That I can't really answer, but in any event, that contract, the interchange agreement, doesn't have Conserve assuming the liability of another party. So that's why... I'm sorry, it's the other way around. It's Deer Pass assuming the liability of another party. It doesn't get there even with the vicarious liability allegations. So in terms of the other issues that were raised, one was that Deer Pass Farms Services was not a motor carrier. That one's been abandoned on appeal. The other argument was that leasing is not the equivalent of hiring or borrowing. I think the district court was effective in addressing that question, I think clearly is, and I think that the one authority that Nationwide has cited in its favor, which I believe was a country mutual case, that doesn't really support that either. And that's, again, I don't think really being pressed at this time. So that's pretty much what our position is on the principal appeal, and if the panel didn't have any other questions, I'd like to turn briefly to the cross appeal. The cross appeal makes an argument that since we're both found to be excess, but under slightly different language, our policy should be deemed super excess to Nationwide's. I wish I had a perfect case or even a very direct case that said that. We're relying on the language of the policies. Clearly we agree that the Nationwide policy is excess as to the driver, the trailer, and the tractor, and it uses the term excess, and then stops there. The clause that we are invoking, the 5B2, and that the district court found applicable, is excess over any other collectible insurance. And our position is a simple linguistic one. It's like, why would you put that in there if it doesn't mean excess to everything? Why is it not a super excess clause? It's a little bit, I guess I can describe it as like an animal farm argument. All excess clauses are excess, but some are more excess than others. And I can't find any good... I don't think George Orwell put that in there as anything to be emulated. No. And I don't think George Orwell would have really wanted to weigh in on an excess insurance coverage issue either. But I think that's what our position is. What does that language mean? I mean, these are, and I think Nationwide correctly points out in the brief... Why not just stop with the argument that excess is excess? That is, you seem content with the district court's conclusion that when there are two excess policies, both of them become primary. I would have rather expected to see an argument that when there are two excess policies, they're both excess. In other words, the insured has to cover the first layer as a deductible. But I gather you're not arguing that. No, we're not arguing that because we would have to have a rather large self-insured retention, I think, for that to make a real practical... What normal people call a deductible. What normal people, rather than insurance coverage lawyers, would call the deductible. I think that's correct, and that's why we... And so why are you not arguing that? Your client bought an excess policy from you, bought an excess policy from the other insurer. So there are two excess policies. The district court found that both of them become primary. And as I said, I don't understand why you're not contesting that since it's an issue of state law on which the district court cited not a single state decision. Correct, correct. But I gather you're not, in fact, contesting that. No, we are not. We're not contesting that, and one of the reasons is really they didn't, technically speaking, buy an excess policy because it's not what they would call a true excess policy. It is an excess policy by operation of law. So there are many circumstances, because in this rather complicated other insurance provision, both of ours are basically primary policies that happen to become excess policies by virtue of the other insurance clause. So we're excess by operation of law, and I think that's probably the best explanation I've got for why we accept that. And Judge Eastbrook is exactly correct. There's no Illinois law directly on point. There are two Illinois district court decisions on the question of cancelling out excess. One of them is obviously the district court decision here. The other one was a district court decision from the Central District in Ross-Wilson Trucking where the court basically said they're both excess, they cancel each other out, and my client was involved in that, Great West Casualty. The argument that I'm making now could have been made there, I think. It was a different counsel. I don't know why they didn't make the argument. Maybe they weren't as enamored of it, I suppose, as we are here. But that's all that I can say about our position there. I think it would be useful for the insurance coverage community to have a distinguished panel like this weigh in on that kind of issue. Only if it's briefed and argued, which it hasn't been. Well, the question about whether we are excess, that is in the cross-appeal. That's what our position has been. The court doesn't have any further questions. I'd like to thank you very much for the opportunity to appear. Thank you, Mr. Reed. Mr. Rentrow, anything further? Yes, Your Honor. I would just briefly like to address some of the arguments raised about the excess clause issue. And there is, and we cite it in our brief, there is a case that talks about when there are two primary policies in Illinois that both try to be excess, what you do in that situation. It's the Ohio Casualty Insurance Company v. Oak Builders. And what they found was, in that case, you look at the facts of it, one of the excess clauses say, exactly like the one here. What they find is when two primary policies try to be excess, they're mutually repugnant. They cancel each other out. They're co-excess. So there is Illinois case law that talks about it. The Central District case was right on point because it's dealing with the exact same party. So that's where we focused on. But I don't want it to be said that there's no Illinois case. We cite it in our brief. It's the Ohio Casualty case. So I think with respect to that, if for whatever reason Great West is found to be excess, it's going to be a co-excess situation. I would just briefly say that we did, I believe we did raise in the underlying court, the issue of the fact that the vicarious liability is the only thing being plied against. That does affect this case. And that does make the Great West policy an insured contract because it's an insured contract for that specific case. So I would contest that. But otherwise, we maintain that Great West is a, should be a primary policy under Subsection G and that the policies are co-excess. If for whatever reason this court was defined that Subsection G does not apply. Thank you. Thank you very much. The case is taken under advisement.